IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH MCINTYRE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-2808 |
| | : | |
| v. | : | |
| | : | |
| KEISHA WALLACE, Correctional Officer; | : | |
| JOHN DOE, Correctional Officer; JOSEPH | : | |
| YODIS, Hearing Examiner; LT. H. | : | |
| PATTON, Security Officer; WELL PATH, | : | |
| Medical Provider; and DEPARTMENT OF | : | |
| CORRECTIONS, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                September 23, 2021

The *pro se* plaintiff is an inmate currently serving a life sentence in a Pennsylvania state prison. He has filed a civil rights action raising constitutional claims under 42 U.S.C. § 1983, naming as defendants the Pennsylvania Department of Corrections, the third-party medical provider for the state prison in which he is incarcerated, and multiple state correctional officers. He has sued all defendants in their individual and official capacities.

The plaintiff's claims arise out of an incident where he was physically assaulted by a correctional officer and sustained injuries from the assault. He alleges that this officer used excessive force when she assaulted him and then retaliated against him after he complained about her assaulting him. He also alleges that he received delayed and deficient medical treatment for the injuries he sustained in this physical altercation with the correctional officer. He further alleges that he wrongfully received a written misconduct for his role in the altercation, that the investigation into the misconduct was improperly delayed and deficient, and that the hearing

conducted on the misconduct was deficient. Finally, he asserts that he was improperly placed in a restrictive housing unit due to the misconduct and, during the process of being transferred to different housing units, his non-legal and legal personal items were lost or destroyed.

The court has screened the complaint as required by 28 U.S.C. § 1915A. As discussed below, the court will dismiss without prejudice the plaintiff's official capacity claims against the individual correctional officer defendants and his claims against the Department of Corrections because the Eleventh Amendment bars these claims. In addition, the court will dismiss with prejudice the plaintiff's claims based on the loss of non-legal property and claims grounded on the way his misconduct charge was investigated, heard, or adjudicated. As for the plaintiff's claim relating to the loss of his legal materials, which the court has interpreted as an access-to-courts claim, as well as his claims for deficient medical care against the third-party medical provider, the court will dismiss them without prejudice and provide the plaintiff with the opportunity to amend the complaint should he be able to cure the deficiencies with these claims.

## I.      ALLEGATIONS AND PROCEDURAL HISTORY

On June 13, 2021, the *pro se* plaintiff, Kenneth McIntyre ("McIntyre"), filed a complaint and a motion for appointment of counsel.[1] *See* Doc. Nos. 1, 2. In the complaint, McIntyre names as defendants SCI-Phoenix correctional officers Keisha Wallace ("Wallace"), John Doe Correctional Officer, SCI-Phoenix misconduct hearing examiner Joseph Yodis ("Yodis"), SCI-Phoenix security officer Lt. H. Patton ("Patton"), WellPath, and the Pennsylvania Department of

---

[1] The federal "prisoner mailbox rule" provides that a pro se prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). Although the doctrine arose in the context of habeas corpus petitions, the Third Circuit has extended it to civil actions brought under 42 U.S.C. § 1983. *See Pearson v. Secretary Dep't of Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015) (applying rule in section 1983 action and determining that pro se prisoner plaintiff filed complaint on date he signed it). Here, McIntyre includes a declaration that he provided the complaint to prison officials for mailing to the clerk of court on June 13, 2021. *See* Doc. No. 1 at ECF p. 21. The court uses this date as the filing date.

Corrections ("DOC"). *See* Compl. at 1–2. McIntyre indicates that he is suing these defendants in their individual and official capacities. *See id.* at 1.

McIntyre is a 69-year-old inmate with a history of back injuries and mental health issues, who is serving a life term without parole. *See id.* at 3. He includes extensive allegations in the complaint. McIntyre avers that on June 25, 2019, while incarcerated at SCI-Phoenix, he became involved in a verbal altercation with the defendant, Wallace, because he believed that she failed to timely open his cell so he could report to the medicine line. *See id.* at 3–5. Once McIntyre's cell door was opened, he passed Wallace and continued the verbal altercation. *See id.* at 5. McIntyre alleges that Wallace approached him, at which time McIntyre placed his arms in the air to indicate surrender. *See id.* Despite this show of surrender, Wallace hit McIntyre with her body, slamming him into wooden mailboxes and a wall, while uttering a sexual epithet. *See id.* McIntyre allegedly injured his shoulder, neck, and back in this incident. *See id.*

After this physical altercation with Wallace, McIntyre proceeded to get his medication. *See id.* at 6. Shortly after getting his medication, McIntyre reported the incident with Wallace to three unnamed correctional officers and asked them to contact a supervisor. *See id.* He also reported the incident to a block sergeant. *See id.* Soon thereafter, a Lieutenant Patterson[2] came to the block and interviewed McIntyre near where Wallace was stationed. *See id.* After this discussion, Lieutenant Patterson and two other female officers escorted McIntyre to the infirmary. *See id.* One of the unnamed officers allegedly stated to Wallace as they were walking past her station that "you better say he assaulted you and felted [sic] your breast to [sic]." *Id.*

---

[2] The individual McIntyre identifies at Lieutenant Patterson appears to be a different person than the defendant, Lt. H. Patton, although the court notes that McIntyre also references a "Lieutenant Patter" in the complaint. *See* Compl. at ¶ 45. The court has not interpreted the complaint as asserting any cause of action against Lieutenant Patterson.

At the infirmary, Lieutenant Patterson left, and a nurse named Ed ("Nurse Ed") examined McIntyre and typed up an incident report. *See id.* Nurse Ed told McIntyre that no doctor was available to see him, but he would forward his report and put a copy in the doctor's inbox to have him called down for an examination. *See id.* Lieutenant Patterson then returned and told McIntyre that video of the incident showed that he did not assault Wallace. *See id.* at 7. Despite the video evidence, McIntyre was taken to the restricted housing unit ("RHU") because Wallace had filed a misconduct report. *See id.* Patton told McIntyre that it was out of her hands because a captain had signed off on the misconduct report. *See id.* At this point, McIntyre was taken to the Mental Health Unit ("MHU") and placed in an observation cell. *See id.* He was returned to the RHU thereafter. *See id.*

On June 29, 2019, McIntyre received a copy of a misconduct report dated the prior day. *See id.* The report listed a hearing date for the following day, June 30, 2019. *See id.* RHU officers would not give him an "Inmate Version and Witness Statement" sheet until June 30th, and McIntyre allegedly had no opportunity to contact witnesses to the incident prior to the hearing. *See id.*

On June 30, 2019, the defendant, Yodis, conducted a hearing on the misconduct report. *See id.* Yodis read the misconduct report and McIntyre's statement. *See id.* McIntyre requested that Yodis review video of the incident and continue the hearing so that McIntyre could prepare his defense. *See id.* at 8. Yodis apparently reviewed the video and, after he returned, allegedly said that the video clearly showed that McIntyre did not assault Wallace. *See id.* Because the video had no audio, Yodis also determined that it could not be shown that McIntyre had used obscene or abusive language. *See id.* Nonetheless, Yodis concluded that McIntyre threated Wallace with

4

bodily harm. *See id.* Yodis allegedly admitted that he was "under pressure form [sic] the guards [sic] union" to not release inmates charged with misconduct. *See id.*[3]

During his move from his original cell assignment to the RHU, the MHU, and then back to his original cell, some of McIntyre's personal property was lost or destroyed. *See id.* at 8–9. This included legal materials, 13 law books, his reading glasses, and his dentures. *See id.* at 9, 10.

While in the RHU, McIntyre had submitted sick call slips, but he was never seen by a doctor for his injuries from the incident with Wallace. *See id.* at 10. Once back in general population, he received an x-ray and analgesic cream that he asserts was ineffective for his pain. *See id.* He was recommended to receive physical therapy "but that never materialized." *Id.* He alleges that he saw a physician months later, and this physician read his x-ray and determined that his pain was due to a "dislocated collar bone [sic] at his shoulder," for which McIntyre was given two steroid injections that gave him slight relief. *See id.*

McIntyre alleges that the defendant, Patton, failed to conduct a timely investigation of the incident involving Wallace. McIntyre asserts that, while the incident occurred on June 25, 2019, Patton did not start her investigation until September 24, 2019. *See id.* at 17. Patton allegedly could not locate McIntyre's written statement and he had to rewrite and resubmit it. *See id.* In addition, Patton did not have the medical report drafted by Nurse Ed. *See id.*

Based on these allegations, McIntyre asserts claims under 42 U.S.C. § 1983 against Wallace for excessive force and retaliation based on her filing the misconduct report. *See id.* at 11–12. He also asserts section 1983 claims against Yodis for due process violations based on the way he conducted the misconduct hearing and his adjudication of the misconduct, which McIntyre asserts was arbitrary and capricious. *See id.* at 12–14. McIntyre brings a claim against WellPath

---

[3] McIntyre apparently appealed Yodis's decision to the Program Review Committee. He asserts that he was released from the RHU after 15 days because his sentence was commuted. *See* Compl. at 8–9, 15.

based on his delayed and deficient medical treatment. *See id.* at 14–15. He asserts claims against a John Doe Correctional Officer based on the loss of his personal property. *See id.* at 16–17. He also asserts a due process claim against Patton because Patton did not commence a timely investigation. *See id.* at 17–18. Finally, he brings a claim for money damages against the DOC based on an alleged violation of its policy on use of force, and a due process claim based on the allegedly unconstitutional misconduct procedures. *See id.* at 18–20.

## II.   DISCUSSION

### A.   Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915

McIntyre has paid the filing fee for this case. *See* Unnumbered Docket Entry After Doc. No. 5. Nonetheless, because McIntyre is a prisoner, the court has the authority to screen his complaint under 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that district courts have authority to screen prisoner's complaint pursuant to 28 U.S.C. § 1915A(b)(1), even if prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the court must dismiss a complaint or any portion therefor that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

The standard for dismissing a complaint for failure to state a claim pursuant to section 1915A(b)(1) is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. CIV. A. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997) ("The Court adopts the familiar standard for Rule

12(b)(6) of the Federal Rules of Civil Procedure in determining whether the complaint fails to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1)."); *Robertson v. McCullough*, 739 F. App'x 932, 936 (10th Cir. 2018) ("To evaluate the sufficiency of a complaint dismissed under 28 U.S.C. § 1915A(b), we apply the same standard applied under Federal Rule of Civil Procedure 12(b)(6)."); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt. And we 'apply the relevant legal principle even when the complaint has failed to name it.' Yet 'pro se litigants must still allege sufficient facts in their complaints to support a claim.'" (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

7

### B.    Analysis

### 1.    Official Capacity Claims

McIntyre is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

As indicated above, McIntyre asserts section 1983 claims against all defendants in their personal and official capacities. He also seeks money damages against the DOC, a Commonwealth agency. McIntyre may not maintain this claim because the Eleventh Amendment prohibits him from suing the DOC or the employees of the DOC in their official capacities.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). It also bars a party from seeking monetary damages from a state official acting in

his or her official capacity unless "waiver by the State or valid congressional override." *See Kentucky v. Graham*, 473 U.S. 159, 169 (1984) ("[T]he Eleventh Amendment bars a damages action against a State in federal court[, and t]his bar remains in effect when State officials are sued for damages in their official capacity."). This bar is in place because, even though state officials literally are persons[,] . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (stating that Eleventh Amendment "also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury").

By enacting section 1983, Congress did not intend to abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 344−45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Additionally, the Commonwealth of Pennsylvania has expressly provided that it has not waived its Eleventh Amendment immunity from suit in federal courts. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity).

As the DOC is a state agency of the Commonwealth of Pennsylvania, *see* 71 P.S. § 310-1, it is immune from suit under the Eleventh Amendment. Also, since the individual defendant correctional officers are state officials, they are entitled to Eleventh Amendment immunity regarding McIntyre's damages claims against them in their official capacities. Pennsylvania has not waived their Eleventh Amendment immunity. *See* 1 Pa. C.S. § 2310 ("[I]t is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."). Therefore, the court will dismiss McIntyre's claims for monetary damages against Wallace, Yodis, Patton, and the John Doe Correctional Officer in their official capacities, and his claims against the DOC for money damages.

## 2.      Claims Against WellPath

McIntyre asserts section 1983 claims against WellPath pertaining to the delayed care and deficient care he allegedly received after the physical altercation with Wallace. McIntyre alleges that WellPath is a private health company which provides medical services to inmates at SCI – Phoenix. *See* Compl. at ¶ 11. "[A] private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (per curiam) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, to hold a private health care company like WellPath liable for a constitutional violation under section 1983, a plaintiff must allege that the medical provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583−84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. 397, 404 (1997)); *Lomax v. City*

*of Philadelphia*, No. 2:13-cv-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotation marks omitted)).

While McIntyre alleges that he failed to receive proper treatment for his injuries and that his treatment was delayed, he fails to allege plausibly that WellPath had a policy, practice or custom that caused a constitutional violation. He has also failed to identify a specific person who allegedly violated his rights. As such, the court must dismiss McIntyre's claim against WellPath.

Despite the court dismissing this claim, the court cannot say at this time that McIntyre can never state a plausible claim based on the deliberate indifference to his serious medical needs. Therefore, the dismissal of McIntyre's claim against WellPath will be without prejudice, and the court will give him an opportunity to file an amended complaint if he can cure the defect the court has identified. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that district court ordinarily must grant leave to amend, even without plaintiff requesting leave to amend, "unless amendment would be inequitable or futile").

### 3.    Non-Legal Property Loss Claims

McIntyre seeks to bring section 1983 claims against a John Doe Correctional Officer allegedly responsible for the loss or destruction of his personal property. To the extent that McIntyre is asserting a due process claim under the Fourteenth Amendment here, he is entitled to due process of law before the government can deprive him of his "life, liberty, or property." U.S.

Const. amend. XIV, § 1, cl. 3. Nonetheless, an individual may not assert a claim under section 1983 for even an intentional deprivation of the individual's property by a state employee, "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

McIntyre cannot assert a plausible due process claim here because Pennsylvania law provides him with an adequate state remedy. *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act, 42 Pa. C.S. §§ 8541–8546, provides an adequate remedy for willful deprivation of property claim). In addition, "[t]he Pennsylvania Department of Corrections['] . . . grievance procedure provides an adequate post-deprivation remedy," and this procedure "forecloses [McIntyre's] due process claim." *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (per curiam) (citing *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000)).

### 4.    Loss of Legal Materials Claim

McIntyre also asserts that some of his legal materials were lost in his transfer to the RHU. The court understands McIntyre to be raising a First Amendment access to the courts claim here. With respect to this claim, prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). However, to prevail on a denial of access to the courts claim, "a prisoner must show actual injury to a specific legal claim which sought to vindicate 'basic constitutional rights.'" *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 354 (1996)); *see also Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." (citing *Lewis*, 518 U.S. at 352–53)). This is because the right of access to the courts "rest[s] on the recognition that

the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that a defendant denied the prisoner access to the courts must allege an injury traceable to the conditions of which the prisoner complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming district court's dismissal of *pro se* prisoner's denial of access-to-courts claims where prisoner failed to tie alleged deficiencies in library to harm in underlying action).

In general, an actual injury occurs when a prisoner demonstrates that the prisoner lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts. *Christopher*, 536 U.S. at 415. Thus, "[t]he underlying cause of action . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *See Diaz*, 532 F. App'x at 63 ("The right [of access to the courts] can be satisfied . . . by appointing Diaz an attorney." (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988) and *Degrate v. Godwin*, 84 F.3d 768, 768–69 (5th Cir. 1996))); *see also Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam) ("We also agree that Prater's inability to access the library as much as he would have liked does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" (citations omitted)).

Here, McIntyre fails to allege that he lost a nonfrivolous and arguable claim due to the destruction or loss of his legal materials. Thus, he has failed to state a plausible claim for relief in the complaint. Nevertheless, the court will provide McIntyre with an opportunity to amend this claim if he can allege that he lost a nonfrivolous and arguable claim due to the destruction of his legal materials.

### 5.      Claims Based on Disciplinary Proceedings

McIntyre alleges a Fourteenth Amendment due process claim against Yodis based on the way he conducted the misconduct hearing and his adjudication of the misconduct. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).

In *Sandin v. Conner*, the United States Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. 515 U.S. 472, 481 (1995). The Court reasoned that, *inter alia*, "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Id.* at 485. Accordingly, focusing on the nature of the punishment instead of on the words of any regulation, the Court held that the procedural protections in *Wolff v. McDonnell*, 418 U.S. 539 (1974),[4] were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

McIntyre complains about being placed in the RHU. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation

---

[4] In *Wolff*, the Court had set forth five requirements for due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) 24-hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact-finders as to the evidence relied upon and the rationale behind their disciplinary action. 418 U.S. at 563–67. In addition, the Court has held that there must be "some evidence" which supports the conclusion of the disciplinary tribunal. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (per curiam) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Placement in disciplinary segregation for 30 days does not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486; *see also Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (per curiam) ("The District Court reasoned that the sanction of 90 days in disciplinary segregation was not an atypical or significant deprivation that would give rise to a liberty interest under *Sandin*. We agree. This same thinking undermines the specific allegations made by Williams in his amended complaint. The lack of representation and inability to call witnesses, as well as any other alleged procedural defects, lack legal significance in the absence of any protectable interest." (citing *Sandin*, 515 U.S. at 487)); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[I]t is now clear that the sanction Smith challenges (seven months disciplinary confinement) does not, on its own, violate a protected liberty interest as defined in *Sandin*."). Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *Parks v. O'Shaughnessy*, Civ. A. No. 1:14-CV-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016) (citing *Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (per curiam)); *see also Moles*, 221 F. App'x at 96 (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"). Thus, absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings.

In this case, no liberty interest was triggered by McIntyre's placement in the RHU for 15 days while he appealed Yodis's decision. *See generally Sandin*, 515 U.S. at 484–87. Thus, because McIntyre cannot raise a plausible due process claim based on the way Yodis conducted the hearing and his adjudication of the misconduct, the court dismisses his claim against Yodis with prejudice.

### 6.      Claim Based on Untimely Investigation

McIntyre's due process claim against Patton is based on Patton allegedly not commencing a timely investigation of his property loss and the incident with Wallace. This claim is also implausible.

As previously noted, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *Parks*, 2016 WL 4385869, at *4. Moreover, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989); *see also Boseski v. N. Arlington Mun.*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual." (citations omitted)). As McIntyre cannot state a plausible constitutional claim based on the loss of his property or the way his misconduct was adjudicated, his claim based on Patton's allegedly untimely investigation is also implausible and must be dismissed.

### III.      CONCLUSION

For the reasons stated above, McIntyre's official capacity claims against Wallace, John Doe Correctional Officer, Yodis, and Patton, and his claims against the DOC are barred by Eleventh Amendment immunity and the court will dismiss them without prejudice.[5] In addition, McIntyre's claims based on the loss of non-legal property and claims grounded on the way his misconduct charge was investigated, heard, or adjudicated, are dismissed with prejudice. As for

---

[5] As this dismissal based on Eleventh Amendment immunity is for lack of subject-matter jurisdiction, the dismissal is without prejudice even though McIntyre cannot reassert another claim for monetary relief against the Commonwealth in this court. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice'" (citations omitted)).

his access-to-courts claim based on the loss of legal materials and his claims against WellPath, the court will dismiss them without prejudice, and the court will grant McIntyre leave to file an amended complaint if he can cure the defects the court has identified in those claims. Should McIntyre opt not to amend, only his claim against Wallace based on excessive force and retaliation will be served on Wallace for a responsive pleading.

The court will enter a separate order.[6]

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[6] This order will provide additional instructions on amending the complaint.